Filed 6/13/22

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D078778 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD287354) |
| CRISTINA ROMERO QUALKINBUSH, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Jeffrey F. Fraser, Judge. Conditionally reversed and remanded with directions.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, A. Natasha Cortina, Acting Assistant Attorney General, Alana Cohen Butler and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

# INTRODUCTION

Cristina Romero Qualkinbush threw a pair of scissors at her 75-year-old mother and then spat on a police officer who detained her following the incident. After the trial court denied Qualkinbush's motion for mental health diversion under Penal Code[1] section 1001.36, she pled guilty to elder abuse (§ 368, subd. (b)(1)) and misdemeanor battery on a peace officer (§ 243, subd. (b)). The trial court placed her on formal probation for three years, subject to certain conditions, including residential mental health treatment. Qualkinbush appeals, claiming that the trial court erred in denying her motion for mental health diversion. She also contends, and the People concede, that we should order (1) amendment of the probation order to vacate certain fees or costs pursuant to Assembly Bill No. 1869 (2019–2020 Reg. Sess.) (AB 1869), which added, amended or repealed various statutes related to fees imposed by the courts on convicted defendants, and (2) correction of the probation search condition to accurately reflect the trial court's oral pronouncement, i.e., to delete authorization of searches of computers and recordable media. We requested that the parties submit supplemental briefs regarding the impact of Assembly Bill No. 1950 (AB 1950) which amended section 1203.1, effective January 1, 2021, and limited the maximum probation term that a trial court is authorized to impose for most felony offenses to two years. (Stats. 2020, ch. 328, § 2; former § 1203.1, subds. (a), (m).) We have received and considered those submissions. The parties agree that the offense of conviction falls under an exception to section 1203.1 and requires a three-year minimum probation term.

---

[1]    Undesignated statutory references are to the Penal Code.

For the reasons explained below, we conclude that the trial court erred when it denied Qualkinbush's motion for mental health diversion. We remand the matter to the trial court with instruction to reconsider the diversion motion, taking into consideration the primary purposes of the mental health diversion statute. If after conducting a hearing on the motion, the trial court again denies mental health diversion, the order granting formal probation shall be reinstated, as modified, to vacate the unpaid portion of the challenged fees and costs, and to correct the probation search conditions to delete authorization of searches of computers and recordable media.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Qualkinbush was born in Russia. She was exposed to alcohol in utero and was raised for the first four years of her life in a dysfunctional family that "exposed her to extreme forms of torture and physical abuse." Her family abandoned her at age four. After she was abandoned, she lived in an orphanage where staff locked her "in a closet for extended periods of time or . . . put [her] in the bathroom for not eating." At age eight, an American couple adopted her and brought her to the United States. Qualkinbush's adoptive father began sexually abusing her shortly after her adoption. She suffered sexual abuse twice a week for approximately four years until her adoptive father's death.

As a juvenile, Qualkinbush exhibited behavioral problems in school including threatening staff and engaging in self-injurious behaviors, physical aggression, and altercations with peers. She made friends easily but quickly lost those friendships due to conflict. Her adoptive mother (mother) described Qualkinbush's juvenile history as "extensive"; however, Qualkinbush's

3

juvenile records are not part of the record on appeal. One juvenile incident reportedly involved Qualkinbush attempting to strangle her mother. The mother reported that Qualkinbush "did very well as a juvenile with structure and services from the system." But after she turned 18, "she got sick and stopped taking her medication and stopped attending mental health services."

In September 2020, at age 20, Qualkinbush got drunk for the first time with a friend and returned to the home she shared with her mother. After getting into an argument with her mother, she held a knife to her own neck, became aggressive, and began knocking over furniture. Qualkinbush threw a pair of scissors at her mother, causing a laceration to her mother's thigh that required suturing. Qualkinbush struggled with police during her arrest— yelling, hitting her head against objects, kicking, and spitting at a police officer.

A felony complaint was filed against Qualkinbush alleging four counts arising out of the incident: willful cruelty to an elder (§ 368, subd. (b)(1)); assault with a deadly weapon (§§ 245, subd. (a)(1), 1192.7, subd. (c)(23)); vandalism causing $400 or more in damage (§ 594, subds. (a), (b)(1)); and misdemeanor battery upon a peace officer (§ 243, subd. (b)). The first two counts also alleged personal use of a deadly weapon (§ 12022, subd. (b)(1)), and great bodily injury upon a person 70 years of age or older (§ 12022.7, subd. (c)). Qualkinbush pled not guilty and denied the allegations.

Qualkinbush filed a pretrial motion for mental health diversion that was supported by a report from a clinical psychologist who diagnosed her as suffering from posttraumatic stress disorder (PTSD), complex trauma, and partial fetal alcohol syndrome. The psychologist opined that Qualkinbush's PTSD played a significant role in the commission of the charged offenses, her

4

mental health symptoms would respond to mental health treatment, and she did not pose an unreasonable risk of committing certain violent felonies known as super strikes. The People opposed the motion, arguing that Qualkinbush's mental illness was not a significant factor in the commission of the charged offenses and that she posed an unreasonable risk of danger to public safety if treated in the community.

In determining Qualkinbush's statutory eligibility for diversion, the trial court found, as conceded by the People, that she suffered from a qualifying mental health disorder, consented to diversion, waived her right to a speedy trial, and agreed to comply with treatment. The court assumed that Qualkinbush's mental illness was a significant factor in the commission of the charged offenses and that she did not pose an unreasonable risk of danger to public safety if treated in the community. Nonetheless, the court concluded that the charged offenses, though not statutorily disqualifying, were not suitable for diversion. In reaching this conclusion, the court commented that the general sentencing objectives in California Rules of Court,[2] rule 4.410 reflected "the various and sometimes conflicting goals of our criminal justice system" and stated:

> "Although mental health diversion might satisfy the objectives of encouraging [Qualkinbush] to lead a law-abiding life and deterring her from future offenses after a lengthy history of mental health issues and past violence, three of the charged crimes involve the use of force that justifies placing the goals of punishment and deterrence of others by demonstrating the consequences of such criminal behavior above the needs of [Qualkinbush]."

---

[2]     Undesignated rule references are to the California Rules of Court.

The court proceeded to deny the diversion motion without prejudice, to permit renewal of the motion before the trial judge. The parties later reached a negotiated disposition pursuant to which Qualkinbush withdrew her not guilty plea and pled guilty to elder abuse and misdemeanor battery on a peace officer. The trial court granted the People's motion to dismiss all remaining counts and allegations. In return for her guilty plea, the prosecution agreed to a sentence consisting of three years of formal probation and a residential mental health program. Upon her successful completion of probation, her felony conviction would be reduced to a misdemeanor. The court sentenced Qualkinbush to three years of formal probation, imposed 365 days of custody, granted her 309 days of credit for time served, required that she be released to a residential mental health treatment program, and imposed certain fines, fees, and costs. Qualkinbush timely appealed and the trial court approved her request for a certificate of probable cause.

III.

DISCUSSION

A. *The Trial Court Abused Its Discretion by Relying on General Objectives of Sentencing and Failing to Consider the Primary Purposes of the Mental Health Diversion Statute in Denying Qualkinbush's Motion for Diversion*

1. General Legal Principles

The Legislature created a pretrial mental health diversion program for defendants with certain diagnosed mental disorders, including PTSD. (§ 1001.36, subds. (a), (b)(1)(A).) The primary purposes of the legislation are to keep people with mental disorders from entering and reentering the criminal justice system while protecting public safety, to give counties discretion in developing and implementing diversion across a continuum of care settings, and to provide mental health rehabilitative services. (§ 1001.35.) Diversion can be "viewed as a specialized form of probation, . . .

6

[that] is intended to offer a second chance to offenders who are minimally involved in crime and maximally motivated to reform, . . . ." (*People v. Superior Court* (*On Tai Ho*) (1974) 11 Cal.3d 59, 66.)

The mental health diversion program allows qualifying defendants to be treated in a community mental health program for up to two years, after which, if they perform "satisfactorily in diversion, . . . the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion." (§ 1001.36, subd. (e).) To be considered for diversion (1) the defendant must make a prima facie showing that he or she meets all of the threshold eligibility requirements,[3] (2) the defendant and the offense are suitable for diversion, and (3) the trial court is satisfied that the recommended program of mental health treatment will meet the defendant's specialized mental health treatment needs. (*People v. Frahs* (2020) 9 Cal.5th 618, 627, citing § 1001.36, subds. (a), (b)(3) & (c)(1).) If these statutory requirements are satisfied "then the court *may* grant pretrial diversion." (*Frahs*, at p. 627, italics added.)

The trial court's determinations as to whether a defendant suffers from a mental disorder under subdivision (b)(1)(A) of section 1001.36 and whether

---

[3] The defendant must make a prima facie showing on the following six eligibility requirements for diversion: (1) defendant suffers from a mental disorder identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM); (2) defendant's mental disorder was a significant factor in committing the charged offense; (3) an opinion from a qualified mental health expert that defendant's symptoms would respond to mental health treatment; (4) defendant consents to diversion and waives the right to a speedy trial; (5) defendant agrees to comply with treatment as a condition of diversion; and (6) defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (§ 1001.36, subd. (b)(1)(A)–(F).)

7

that disorder played a significant role in the commission of the charged offense are reviewed for substantial evidence. (*People v. Gerson* (2022) 74 Cal.App.5th 561, 572–573.) "Ultimately, however, diversion under section 1001.36 is discretionary, not mandatory, even if all the [statutory] requirements are met" and we "review for abuse of discretion the trial court's decision whether to grant a request for mental health diversion." (*Id.* at p. 573.) " 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' " (*Ibid.*)

    2.  Analysis

Qualkinbush contends that she met her burden to establish the six eligibility requirements for diversion and that the trial court abused its discretion by applying the general sentencing objectives contained in rule 4.410 in determining her suitability for diversion rather than applying the specific mental health diversion objectives set forth in section 1001.35. The People assert that Qualkinbush forfeited her claim because the trial court denied her motion without prejudice and she never renewed it prior to pleading guilty. Assuming that we reject the forfeiture argument, the People assert that the trial court properly exercised its discretion to deny Qualkinbush's motion based on her unsuitability for diversion.

The record does not support the People's forfeiture argument. The trial court noted that case law appears to allow for mental health diversion until final judgment and that a possibility existed that the trial judge, if "presented with additional evidence *at trial*, could conclude that such diversion is appropriate." (Italics added.) On this basis, the trial court denied Qualkinbush's motion "without prejudice [for renewal] before the trial judge."

However, Qualkinbush pled guilty and never had an opportunity to renew her motion. On this record, Qualkinbush properly notes that any renewed motion without additional evidence would have been frivolous.

The trial court's denial of Qualkinbush's motion for mental health diversion is appealable. (See, e.g., *Morse v. Municipal Court* (1974) 13 Cal.3d 149, 155 ["[a]n order denying [drug] diversion is a preliminary determination from which no provision is made for interlocutory review but which is subject to review on appeal from a judgment in the criminal proceedings"]; § 1237.5 [defendant may appeal from a judgment of conviction upon a guilty plea by obtaining a certificate of probable cause].) Accordingly, Qualkinbush's timely appeal and receipt of a certificate of probable cause preserved the matter for appellate review.

With respect to the six statutory eligibility requirements set forth in section 1001.36, subdivision (b)(1), the trial court found that three of these requirements were not at issue[4] and assumed a finding in Qualkinbush's favor on two additional requirements.[5] The trial court did not address the last eligibility requirement, i.e., whether Qualkinbush had presented an opinion from a qualified mental health expert that her symptoms would respond to mental health treatment. (§ 1001.36, subd. (b)(1)(C).) This

---

[4] The People conceded that Qualkinbush suffered from a qualifying mental health disorder, Qualkinbush consented to diversion and waived her right to a speedy trial, and agreed to comply with treatment. (§ 1001.36, subd. (b)(1)(A), (D), (E).)

[5] The trial court assumed a finding that Qualkinbush's mental illness played a significant role in the commission of the charged offenses, and that she does not pose an unreasonable risk of danger to public safety if treated in the community. (§1001.36, subd. (b)(1)(B), (F).)

9

omission appears to be an oversight because the psychologist who evaluated Qualkinbush stated in her report that Qualkinbush's symptoms would respond to mental health treatment and that available treatments existed— points that the People did not contest. Accordingly, the evidence supported a finding in Qualkinbush's favor on this final eligibility factor. Notably, the People do not challenge Qualkinbush's eligibility for diversion on appeal.[6]

Even after a defendant makes a prima facie showing that he or she meets the six threshold eligibility requirements, a trial court may still exercise its discretion to deny mental health diversion if it finds that the defendant or the offense are not suitable for diversion. (§ 1001.36, subd. (b)(3).) The trial court expressly found that Qualkinbush's offenses were "not suitable for diversion." In her briefing on appeal, Qualkinbush appears to contend that a defendant may be deemed not suitable for diversion under section 1001.36 subdivision (b)(3) only if the court finds that the defendant poses an unreasonable risk of danger to public safety. (§ 1001.36, subd. (b)(1)(F).) We reject this contention.

" 'When construing a statute, we must "ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' [Citations.] '[W]e begin with the words of a statute and give these words their ordinary meaning.' [Citation.] 'If the statutory language is clear and unambiguous, then we need go no further.' [Citation.] If, however, the language supports more than one reasonable construction, we may consider 'a variety of

---

6    The Legislature has excluded defendants charged with specified offenses, including murder, from the diversion program. (§ 1001.36, subd. (b)(2)(A)–(H).) The criminal complaint shows that the People did not charge Qualkinbush with an offense that precluded her eligibility for diversion. Nothing in the trial court's ruling suggests that it misunderstood the types of offenses that preclude mental health diversion.

extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.] Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " (*People v. Sinohui* (2002) 28 Cal.4th 205, 211–212.) "Where reasonably possible, we avoid statutory constructions that render particular provisions superfluous or unnecessary." (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 459.)

The language and construction of section 1001.36 do not support Qualkinbush's argument that a defendant shall be deemed suitable for diversion under the statute if the court finds that the defendant does not pose an unreasonable risk of danger to public safety. The requirement that a defendant not pose an unreasonable risk of danger to public safety is one of the six eligibility requirements of section 1001.36, subdivision (b)(1). The Legislature added the requirement that "the defendant and the offense" be suitable for diversion in 2019 in new subdivision (b)(3). (Stats. 2018, ch. 1005, § 1, eff. Jan. 1, 2019.) Construing the new requirement that the defendant and offense be suitable for diversion as equivalent to a defendant not posing an unreasonable risk of danger to public safety would render the new statutory language superfluous. (*Williams v. Superior Court* (1993) 5 Cal.4th 337, 357 ["An interpretation that renders statutory language a nullity is obviously to be avoided"].)

The next question that we must address is the intended meaning of the new term. We have reviewed the legislative history of the 2019 amendment

11

that added subdivision (b)(3) to section 1001.36 and obtained no insight into the intended meaning of the new suitability requirement.  As the People note, and our independent research has confirmed, no case law exists interpreting this term.  The only interpretation of the new term appears in a legal treatise that commented:

> "Accordingly, it seems clear the court can grant diversion if the minimum standards are met, and, correspondingly, can refuse to grant diversion even though the defendant meets the technical requirements of the program.
>
> "There may be times, because of the defendant's circumstances, where the interests of justice do not support diversion of the case.  The defendant's criminal or mental health history may reflect a substantial risk the defendant will commit dangerous crimes beyond the 'super strikes' identified in section 1001.36, subdivision (b)(6).  It may be that because of the defendant's level of disability there is no reasonably available and suitable treatment program for the defendant.  The defendant's treatment history may indicate the prospect of successfully completing a program is quite poor.  Conduct in prior diversion programs may indicate the defendant is now unsuitable.  (See § 1001.36, subd. (h) [the court may consider past performance on diversion in determining suitability].)  The court may consider whether the defendant and the community will be better served by the regimen of mental health court.  (See § 1001.36, subd. (c)(1)(B) [the court may consider interests of the community in selecting a program].)  Clearly the court is not limited to excluding persons only because of the risk of committing a 'super strike'—the right to exclude because of dangerousness goes well beyond that limited list.  In short, the court may consider *any* factor relevant to whether the defendant is suitable for diversion."  (Couzens et al., Sentencing California Crimes (The Rutter Group, Sept. 2021 update) § 7:21, pp. 7-29–7-30.)

12

In examining the suitability of Qualkinbush and the charged offenses for mental health diversion, the trial court relied on the general sentencing objectives of the criminal justice system as articulated in rule 4.410.[7] Qualkinbush asserts that the trial court erred in relying on rule 4.410 and that doing so amounted to an abuse of discretion because the court should have relied instead on the remedial purpose of the legislation as articulated in section 1001.35.[8]

Another appellate court addressed an analogous argument in the context of the military diversion statute (§ 1001.80), stating that "[a] trial court lacking specific, statutory criteria to guide its suitability determination is not operating in a vacuum; that the statute imposes no restrictions on what the court may consider does not alter the court's fundamental duty to exercise discretion consistent with the principles and purpose of the

---

[7] Rule 4.410(a) lists the general objectives of sentencing as: "(1) Protecting society; (2) Punishing the defendant; (3) Encouraging the defendant to lead a law-abiding life in the future and deterring him or her from future offenses; (4) Deterring others from criminal conduct by demonstrating its consequences; (5) Preventing the defendant from committing new crimes by isolating him or her for the period of incarceration; (6) Securing restitution for the victims of crime; (7) Achieving uniformity in sentencing; and (8) Increasing public safety by reducing recidivism through community-based corrections programs and evidence-based practices."

[8] Section 1001.35 states that "[t]he purpose of this chapter is to promote all of the following: [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety. [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings. [¶] (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders."

governing law. [Citation.] But neither do we view lawful limits on the exercise of discretion as a basis for limiting the court's consideration of factors or criteria that it deems relevant, so long as that assessment does not reveal an erroneous understanding of or ' "transgress[ ] the confines of the applicable principles of law" ' [citation]. The discretion to consider a defendant's suitability for pretrial military diversion necessarily requires discretionary judgments about which criteria or factors best determine suitability, and both operations of discretion must be informed by the legal principles and purpose of the statute guiding the court's actions." (*Wade v. Superior Court* (2019) 33 Cal.App.5th 694, 710 (*Wade*).)

In *Wade, supra*, 33 Cal.App.5th 694, the appellate court concluded that the trial court did not err in considering an information sheet of factors derived from the felony sentencing guidelines set forth in various California Rules of Court in deciding the defendant's suitability for military diversion. (*Id.* at pp. 714–715.) Nonetheless, the reviewing court found that the trial court had abused its discretion in denying military diversion because "its explanation for denying pretrial diversion gave no indication that it was informed by the rehabilitative principles that define the military diversion statute" and "nothing in the record . . . demonstrate[d], 'either explicitly or by inference, that the trial court based its discretion with the proper primary objective in mind.' " (*Id.* at p. 716.)

The trial court in this case committed a similar error. Relying on the general sentencing objectives articulated in rule 4.410, the trial court found Qualkinbush unsuitable for mental health diversion, and further found that punishment was appropriate, based on her lengthy history of mental health issues, her use of force in the commission of the charged crimes, and her history of violence. There is no indication in the trial court's comments that

14

the court considered the primary purposes of the mental health diversion statute, as set forth in in section 1001.35, in imposing sentence. In particular, there is no indication that the court considered the goals of promoting increased diversion of individuals with mental disorders to mitigate their entry and reentry into the criminal justice system while protecting public safety,[9] and providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders. (*Wade, supra*, 33 Cal.App.5th at p. 716.)[10]

The appropriate remedy is to remand the matter to the trial court to reconsider Qualkinbush's motion for mental health diversion, bearing in mind the statutory principles and purpose of the mental health diversion statute. (*Wade, supra*, 33 Cal.App.5th at p. 718.) We express no opinion as to how the court should exercise its discretion on remand.[11]

---

[9] As noted, *ante*, in addressing the six eligibility factors, the court did not find that Qualkinbush would pose an unreasonable risk of danger to public safety if treated in the community. The fact that the court granted probation and imposed a condition that Qualkinbush be released to a residential treatment program suggests that the court implicitly found that Qualkinbush in fact would not pose a danger to the community if released from custody.

[10] The instant offenses are Qualkinbush's first as an adult *despite* her lengthy history of mental health issues and the fact that she stopped attending mental health services and discontinued taking her medications when she turned 18. Additionally, the record does not suggest that Qualkinbush is particularly violent or prone to using force.

[11] We question the discussion in *Wade, supra*, 33 Cal.App.5th 694, to the extent it suggests that a trial court may properly consider general sentencing objectives in determining a pretrial mental health diversion motion. (*Id.* at pp. 714–715.) For purposes of evaluating the defendant's eligibility and/or suitability for pretrial mental health diversion, the court must treat the matter as if the charges against the defendant have not yet been adjudicated; the court is not sentencing the defendant. Thus, the general sentencing

B.  *AB 1869 Requires Modification of Qualkinbush's Financial Obligations*

At sentencing, the trial court imposed certain costs and a fee, including a criminal justice administration fee of $154 (Gov. Code, § 29550), presentencing investigation costs of $1,433 (§ 1203.1b), probation supervision costs of $176 per month (§ 1203.1b), and attorney services costs of $570 (§ 987.8).  Qualkinbush contends that AB 1869 requires that these financial obligations be vacated.  The People agree that we should vacate the unpaid balance of these financial obligations and order the superior court to amend the abstract of judgment to reflect that vacatur.  We concur.

The Legislature enacted AB 1869, effective July 1, 2021, which repealed the provision under which the trial court ordered Qualkinbush to pay the $154 criminal justice administration fee.  (Assem. Bill No. 1869 (2019–2020 Reg. Sess.) § 11.)  This bill also added section 1465.9, subdivision (a) (*id.* at § 62) which provides that "[t]he balance of any court-imposed costs pursuant to . . . Sections 987.8, . . . [and] 1203.1b, . . . as those sections read on June 30, 2021, shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated."  (§ 1465.9, subd. (a).)  The plain language of the newly-enacted statute mandates that any unpaid balances of these financial obligations automatically became unenforceable and uncollectible beginning on July 1, 2021, and requires that they be vacated.  (*People v. Lopez-Vinck* (2021) 68 Cal.App.5th 945, 953.)

C.  *The Probation Order Search Term Requires Correction*

Qualkinbush contends, and the People agree, that the probation order erroneously imposed an electronics search term that conflicts with the trial

objectives of the criminal justice system as articulated in rule 4.410 had no application to Qualkinbush and do not provide a proper basis for denying her motion for diversion.

court's oral pronouncement of sentence deleting this term.  The parties are correct.

The probation department recommended that Qualkinbush's probation include a search condition as part of her probation requiring that she "[s]ubmit person, vehicle, residence, property, personal effects, computers, and recordable media including electronic devices to search at any time . . . ."  During sentencing, defense counsel asked the court not to impose that term to the extent that it would allow searches of "electronic devices, recordable media, and computers," and the court said, "Go ahead and delete that."

The probation order originally authorized searches of Qualkinbush's "personal effects, computers, and recordable media including electronic devices" as suggested by the probation department.  The court clerk crossed out the phrase "including electronic devices" and wrote the word "deleted" above it.  The probation order conflicts with the trial court's oral pronouncement which also deleted searches of Qualkinbush's recordable media and computers.  Where, as here, a discrepancy exists between the court's "oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls."  (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.)

D.  *AB 1950 Does Not Impact Qualkinbush's Probation Term*

Effective January 1, 2021, AB 1950 amended section 1203.1 (Stats. 2020, ch. 328, § 2) to limit the maximum probation term that a trial court is authorized to impose for most felony offenses to two years.  (Former § 1203.1, subd. (a).)[12]  Subdivision (l) of section 1203.1 lists certain exceptions to the

---

[12]    The Legislature subsequently amended and then replaced section 1203.1.  (Stats. 2021, ch. 257, §§ 21, 22 [Assembly Bill No. 177 (2021–2022 Reg. Sess.)].)  As relevant here, former section 1203.1, subdivision (m), was

two-year probation limit in subdivision (a), including any offense that "includes specific probation lengths within its provisions." (§ 1203.1, subd. (l).) If an exception applies, then probation "may continue for a period of time not exceeding the maximum possible term of the sentence . . . ." (§ 1203.1, subd. (l).)[13]

The People contend that Qualkinbush waived any challenge to a stipulated sentence and thus may not contest the length of her probation under AB 1950 because she accepted that term of probation as part of her plea bargain. The written plea agreement states: "NOLT; Releasable to program pending PHS. No contact order remains with the continued exception that Ms. Qualkinbush can have telephonic contact with protected party. 17(b) upon SCOP with no violations."[14] Qualkinbush initialed the box next to the advisement that the maximum punishment resulting from the change of plea would be five years in prison, and if "not sentenced to imprisonment, I may be granted probation for a period up to 5 years or the maximum term of imprisonment, whichever is greater." She also initialed the box giving up her right to appeal "any sentence stipulated herein."

---

redesignated as section 1203.1, subdivision (l). Hereafter, this opinion will cite to the current version of the statute.

[13] Qualkinbush pleaded guilty to count 1 and another offense approximately one month *after* AB 1950 went into effect on January 1, 2022.

[14] " 'NOLT' is an acronym meaning that the district attorney will not oppose local time." (*People v. Patton* (2019) 41 Cal.App.5th 934, 942 (*Patton*).) The reference to section 17 indicates the parties' agreement, as discussed at the change of plea hearing, that Qualkinbush's felony conviction for elder abuse would be reduced to a misdemeanor upon her successful completion of probation.

Although the written plea agreement does not show that the parties agreed to a stipulated term of three years of formal probation, all other portions of the record reflect this understanding, including the probation report, and the transcripts of the change of plea hearing and the sentencing hearing.  Additionally, both appellate counsel concur in their briefing in this court that the parties' agreed to a three-year probation term.  Under these circumstances, it appears that the written plea agreement does not accurately state the terms of the parties' agreement and we defer to the parties' and court's statements in the reporter's transcripts, which indicate that the parties agreed to a three-year term of probation.  (*People v. Harrison* (2005) 35 Cal.4th 208, 226 [the prevailing portion of the record "will depend on the circumstances of each particular case"].)  Accordingly, it appears that Qualkinbush waived any challenge under AB 1950 to the stipulated three-year probation term.  (*People v. Hester* (2000) 22 Cal.4th 290, 295.)

In any event, the parties agree that Qualkinbush is not entitled to relief under AB 1950 based on the nature of her conviction.  Section 1203.097 sets forth specific probation lengths and requires a "minimum period of probation of 36 months" for "a crime in which the victim is a person defined in [s]ection 6211 of the Family Code."  (§ 1203.097, subd. (a)(1).)  "Section 1203.097 applies to any person placed on probation for a crime if the underlying facts of the case involve domestic violence, even if the statute defining the crime does not specifically refer to domestic violence."  (*People v. Cates* (2009) 170 Cal.App.4th 545, 548.)

Family Code section 6211 defines " '[d]omestic violence' " as "abuse perpetrated" against a "person related by consanguinity or affinity within the second degree."  (Fam. Code, § 6211, subd. (f).)  Qualkinbush is the victim's adopted daughter.  A parent and child are related in the first degree of

consanguinity (Prob. Code, § 13, subd. (b)), and an adopted child is considered to be the child of an adoptive parent. (*In re Darling's Estate* (1916) 173 Cal. 221, 223; cf. rule 5.502(1) [defining affinity as the connection between one spouse and the other spouse's blood or adoptive relatives].)

We interpret the phrase, "an offense that includes specific probation lengths in its provisions" in subdivision (l)(1) of section 1203.1 to refer not only to the statute defining the elements of the crime, but also to any statutory provisions to which the court must look to determine the proper term of probation. Qualkinbush's offense of conviction (§ 368, subd. (b)(1)) does not, itself, include a specific probation length. However, in order to determine the proper term of probation for a defendant convicted of this crime, the trial court must refer to section 1203.097 and, under the circumstances of this case, to Family Code section 6211, because the victim in this case is a person defined in Family Code section 6211. Thus, the two-year probation limit in section 1203.1, subdivision (a), does not apply to Qualkinbush.

## IV.

## DISPOSITION

Qualkinbush's guilty plea is conditionally vacated and the order granting formal probation is conditionally reversed. The matter is remanded to the superior court to conduct another mental health diversion eligibility hearing under section 1001.36, no later than 90 days from the filing of the remittitur, and exercise its discretion in conformity with the principles articulated herein. Specifically, in determining whether Qualkinbush and/or her offense are suitable for mental health diversion, the court is to consider the goals of promoting increased diversion of individuals with mental disorders to mitigate

20

their entry and reentry into the criminal justice system while at the same time, protecting public safety.

If the trial court again denies pretrial mental health diversion, or if the court places Qualkinbush on diversion but she fails to successfully complete diversion, Qualkinbush's guilty plea and the order granting formal probation shall be reinstated as modified to (1) vacate the portion of the criminal justice administration fee (Gov. Code, § 29550), presentencing investigation costs (§ 1203.1b), probation supervision costs (§ 1203.1b), and attorney services costs (§ 987.8) that remained unpaid as of July 1, 2021, and (2) correct the order to strike the terms "computers, and recordable media" from condition 6n.  The order granting formal probation is otherwise affirmed.

AARON, Acting P. J.

WE CONCUR:

IRION, J.

DATO, J.

21